Case No. 15-7070, Nanko Shipping, USA, parent company of Nanko Shipping, Guinea, at L. Appellants v. Alcoa, Inc. and Alcoa World Alumna, LLC. Mr. Temple for the Appellants, Mr. Biersig for the Appellees. Case No. 15-7070, Nanko Shipping, USA, parent company of Nanko Shipping, Guinea, at L. Appellants v. Alcoa, Inc. Case No. 15-7070, Nanko Shipping, USA, parent company of Nanko Shipping, Guinea, at L. Appellants v. Alcoa, Inc. Good morning. No, have a drink of water. Good morning. Good morning. My name is Donald Temple and I represent Nanko Shipping, Guinea, an entity which is a subsidiary of Nanko Shipping, USA, which is owned by an African-American of dual citizenship, Guinean and American citizenship, based here in Washington, D.C. At the outset, the Appellant concedes the first claim of this complaint, the third-party beneficiary claim, and proceeds accordingly on grounds that the lower court erred in dismissing the three remaining claims, which include 42 U.S.C. 1981, Tortures Interference, and of course, while it's not a cause of action, a civil conspiracy claim on the District of Columbia, which involves the Tortures Interference claim. The standard of review for purposes of the Rule 12 claim that's before the court is de novo. Standard of review on the Rule 19 indispensable party claim is abuse of discretion. I'm sorry. I missed the first part of your sentence. Who's conceding? The third-party beneficiary breach of contract count one claim is conceded. By you? Yes. All right. Thank you. The Appellant seeks to have this case reversed and remanded with instructions, and given the complexity of the facts, I'll try to suspend with them except to say a couple of things. One is very important to understand. In this case, the discrimination occurs while it involves a mining case in Guinea, West Africa. In Article 9 that's in this record, it was anticipated that the American and Guinean interests at some point would form a corporation of American interests to help develop this mining contract. Guinea became an independent country sometime in the 1960s, and this mining contract involved the exploitation of bauxite. Consistent with the Article 9 of this contract, it was anticipated that Guinea would control 50% of the shipping rights. That language is rooted and stated in Article 9 in what would be the paragraph 9 of Article 9. I would also state and say, in fact, that that is not disputed in this record. In fact, there was a resolution. The mining contract resulted in what was called a board which consisted of HALCO, which was the miner, and Guinea. They created a board. That board basically controlled all the activities. That board met, pursuant to this particular claim, in New York in November 2011, whereupon they ratified an agreement that Guinea ultimately entered into with the appellant. What's critical about that agreement is that agreement is called a technical assistance agreement. It's a TAA. It was anticipated that Guinea, a developing country, would at some point enlist the support of independent contractors to help develop the resources from the mining contract, which were rooted in 50% of the shipping. And to be clear, the shipping is 50% of the proceeds were anticipated to come back to Guinea for purposes of development in Guinea, developing a maritime activity. Come back to the economy, not to the government. Come back to the economy in the sense that if it's a Guinean-based company, just trickle down. Precisely. Because the company would be presumably spending money in its country where it's chartered. Is that the idea? When you say the company, you're talking about NACO shipping? Yes. NACO shipping would basically manage the shipping rights, control the shipping rights, and occasionally induce shipping. The proceeds would go back to Guinea with the objectives of Article 9, which would be development in nature to help develop Guinean workers, train them, develop potentially a shipping company, et cetera, et cetera. So Guinea could ultimately develop its own economy. So the answer is yes. You provided the CBG agreement but not the TAA. This is just at the complaint stage, I understand, but we don't have much information about what – I mean, it seems quite significant to your client's position whether it is, in fact, plausible that it is the assignee or the chosen shipper under Guinea's rights. Well, I think that, first of all, the court is correct. It is a motion to dismiss for purposes of – it's at the pleading stage. For purposes of the pleading stage, as pledged, there is an extensive second amended complaint upon which the court based its ruling. While it decided not to allow us to amend that second complaint, we think erroneous grounds that it would be futile. That second amended complaint details, in fact, and I don't think there's any reason to question the specific facts here, as alleged, that Nyko Shipping received a technical assistance agreement, and it outlines in detail what the rights are under the technical assistance agreement. And not only that, that the technical assistance agreement was the subject of a resolution in New York, pertinent to basically ratifying it and allowing them to manage control of the shipping rights. In addition to that, I would point the court's attention to the exhibits to the first complaint, which are at pages 33, 34, 35, 36, 37. There's an exchange of correspondence where Nyko Shipping articulates to Alcoa Steamship the particular rights that it is alleging that it has under the technical assistance agreement. And those particular documents were incorporated by reference in its exhibit to the amended complaint and consistent therewith with the second amended complaint. So I don't think there's any ambiguity there. All right, so let me just, I'm sorry to go back to square one here, but just so I'm very clear. What we are presented with is whether the district court erred as to counts two, three, and four of the second amended complaint in ruling that first you had failed to join a necessary party under Rule 19B. That's correct. And then abused its discretion in denying reconsideration. Well, there's a little bit more, Judge Rogers, if I may. Yes. That's partly true, but also the court, though it doesn't give a profound analysis, there is also the issue of whether the arbitration clause in the CBG actually applies to the dispute between Nyko Shipping, pertinent to the 1981 claim and the tortious interference claim. But that's all part of the Rule 19B analysis. Actually, I think it may be part. No, it's whether you have another remedy. That's one of the considerations. But also the court says in its decision that notwithstanding the Rule 19 argument that the arbitration clause does apply. I can briefly address both of those issues. And one of the things that I think pertains to the Rule 19 argument is this. In this jurisdiction, in assessing the Rule 19 argument, particularly where you have a sovereign jurisdiction like Guinea, the court basically operates on, I think, an erroneous presumption that because we have Guinea and it's a sovereign entity, that Guinea has interest. And if it's not a party, that those interests can't be resolved. Well, I think that this jurisdiction, in its interpretation of Rule 19, believes that you have to look at the facts in order to make that assessment. In this particular situation, the error of the lower court is that the lower court operated on the presumption that Guinea's interest would be impaired in prejudice. However, if you look at the lower court's decision at pages 8 and 9, the lower court says this. It says, we are not, we would have to examine the CBG, the convention, to determine what rights Guinea had and, therefore, what rights NACO shipping had. It's more profoundly stated, however, in the court's opinion on the motion for reconsideration. And in that particular opinion, at pages of the appendix 153, starting at the bottom paragraph, the court again says, we can't determine these issues without first examining and conducting an analysis. So is your argument that it was an abuse of discretion for the district court to rule on the Rule 19 issue before allowing you limited jurisdictional discovery? That's correct. And in addition to that, the court could not possibly ascertain, and this is a critical point here. The court is presuming that Guinea's interest is impaired one way or the other. Even the appellee states at 31 of his brief in footnote 53, it states that there has to be an analysis of the convention to even understand whether the 1981 racial discrimination rights are implicated. However, notwithstanding the fact that the convention was provided to the court, the court at no point analyzed the convention, made any findings as to the convention, relative to the impact, substantively, on the impairment of Guinea. Keeping in mind that it is Guinea that has 50%, and that's the issue, whether it's a 50% issue. Article 9 says that, and by the way, that's not disputed. At no point does the appellee say that Guinea doesn't have a 50% interest. In fact, the very fact of the matter is that the CBG board met in New York and basically ratified that 50% interest by agreeing to the TAA. Well, to be fair, this is on a motion to dismiss, so they aren't allowed to bring in facts, or they don't have an obligation, nor are they permitted to bring in facts that would dispute the facts that you've alleged. At this stage, we're testing the sufficiency of the complaint, assuming all well-plated facts are true. So we can't assume, because there's nothing contesting that, that they don't actually dispute it. But I'm not dealing just with all due respect to the issue of the motions. I'm dealing with the question of the Rule 19 indispensable party ruling, and the fact that even if there's a different burden there, because that burden is abuse of discretion, the court cannot logically, intelligently make a decision that Guinea's rights are impaired. No, I take your point. There's a lot of things, a lot of determinations that the court appears to have made that would depend on more than the allegations of the complaint. I take that point. But additionally, to the court's point, the inferences in the close factual situations, the lower court made inferences consistently against NICO and in favor of the defendant's ALCOA. And so to that extent, when we go to the, and a great example linking right into the issue of Rule 19, linking it into the arbitration, the court's attention is directed to the arbitration clause. This is an interesting arbitration clause, I submit, because logically, I would agree with the appellee. If there's an arbitration clause, there's a derivative contract. Arbitration clause applies. But in 1963, when ALCOA, when HALCO entered into a contract with Guinea, it did something that was very peculiar. There was a stipulation clause, and it's unambiguous. That stipulation clause stated that unless parties other than the government, again, HALCO, and the CBG, quote, unquote, the company, entered into a stipulation accepting the terms of the arbitration clause, it would not apply. It is not ambivalent. But the fact that you have to stipulate in order for it to apply doesn't mean you're precluded from doing that. In other words, isn't the language broad enough to cover your disagreement here? You know, in other words, it's a contract which arises out of, you know, this convention. And so the arbitration clause could cover it if you wished it to do so. Is that correct? I think the court's point to you is yes. However, I think that is a juxtaposition of that particular point with the very fact of contract law. And the fact that the court below and the appellee makes the argument that this arbitration is mandatory because of the language in Article 13 and that stipulation. It is not mandatory. And as the court appropriately pointed out, it might be optionable, but it's not mandatory. Therefore, it doesn't obviate the fact that we can come to the federal court to protect the federal rights, constitutional rights of the contractor in a situation that's potentially racially discriminatory. In fact, I note to the court that that particular provision was not even addressed by the lower court until they were ignored by the appellee in its brief. Why? Because of the point that the court is making, it does not apply in that first-year law school language. There's no ambiguity in the contract. It shouldn't apply. As to the issue of the discrimination, we have a 42 U.S.C. 1981 claim. And it's an interesting claim because at first glance, one would say, how does a mining contract in Africa come into a federal court in the United States? Well, the American corporation Halco is based here in the United States. Alcoa is based here in the United States. And it's an interesting thing because Alcoa has two, three tiers. There's Alcoa Aluminum, which owns Alcoa World Aluminum, which is based in Delaware. And then there's Alcoa Steamship, which is based in Knoxville. And we have been trying to connect the dots in something that's somewhat of a maze. And so I would understand that the court's confused, except I'll say this. Here, we have a contract, an international agreement, where Guinea has 50 percent. And that's a predicate of our claim. Guinea gives that because it wants to implement it, operationalize it to NACO shipping. NACO shipping then attempts to implement it. Guinea, NACO goes to New York. It's ratified. It gets blessing. But New York says— In the New York meeting, you mentioned Guinea. Did Guinea have a representative in New York? The meeting in New York is a CBG board meeting, and Guinea is part of that CBG. Did they have a representative? Yes, they did. And at that meeting, the directive coming from CBG was that NACO shipping would have to go to Alcoa Steamship in Knoxville, Tennessee, to implement the TAA. When it went to Knoxville, Tennessee, and it counted an all-white group of representatives there, everything that happened in New York and all the substance of Article 9 was challenged. For three years, NACO shipping consistently, and it's reflected in the record in terms of the communications at 833 and thereafter to about 840, consistently has these communications. And what happens is that Alcoa in Knoxville absolutely refuses to recognize the fact that Guinea is entitled to, and therefore NACO shipping, to manage, essentially, and control this 50%. Now, what's critical about that? Yes? Would this court have personal jurisdiction over Guinea? Would the district court in D.C. have jurisdiction over Guinea if a party wanted to bring it before the district court? Actually, the issue would not necessarily be personal jurisdiction. It would be sovereign immunity. Well, both need to be overcome. Guinea is not in the case. It hasn't asserted any sovereign immunity. But if somebody were to seek to implead Guinea, would this court have personal jurisdiction? I think that to the extent that sovereign immunity was resolved, it would. Guinea has connections to this jurisdiction. What are they? It has an embassy here. It has lobbyists here. It has representatives here. And Guinea does business in the United States. Anything relating to this case, this dispute? Has it come to meet with anybody in D.C. with regard to these shipping rights? I do not know that to be the case, that Guinea has definitively come here, other than to NACO shipping. I would note, though. It has come to NACO shipping? No, no. I want to make a clear point of clarification, which is significant relative to Guinea. NACO shipping's proposition here, and NACO shipping has a relationship with the Guinean government as well. So NACO shipping, when it's seeking these rights through the TAA, is actually working in conjunction with the Guinean government, in the same way the court references in the complaint, in the record, as a prior transaction, where the government created a joint venture with the all-white entity, Clavis, to the government. Why is this case here in D.C.? Why is it in D.C.? Because NACO shipping is Guinea, and NACO shipping's parents are located here in D.C. And NACO shipping, when it's communicating with the parties, all the NACO shipping, when you look at the communications that NACO shipping is having, it's having by way of its D.C. office. NACO shipping, Guinea, is having by way of its D.C. office. Moreover, the value issues have not been raised by the appellee. All right. It's just an issue, a threshold issue in Rule 19, which is why I'm asking about it. Because the court has to consider whether an absent party would be prejudiced in its absence, and whether it could be brought in, and if it can't be brought in, whether the case has to be dismissed. So part of the question is, could Guinea be brought in? Does Guinea communicate with NACO in D.C. about this shipping? I think it could, but I would disagree with the court respectfully relative to its interpretation that this question of Rule 19A means that if there is sovereign immunity, whether it could be brought in is the primary question. I wasn't talking about sovereign immunity, because nobody's raised sovereign immunity. Only the sovereign can raise that. It's not even in the case yet. So, but the prior question about whether the court could exercise jurisdiction over NACO. Jurisdiction over NACO. Yes. I see my time has expired, and I can resume. Why don't we hear from Apolli, and then we'll give you a few minutes in rebuttal. If it pleases the court, my name is Tom Bursick, representing the Apollis here. I believe counsel for NACO conceded, and the court recognizes that all of the claims asserted in this case derive from shipping rights that allegedly belong to the Republic of Guinea under the 1983 agreement referred to as the convention between HALCO on one hand and the Republic of Guinea on the other hand. And for more than 50 years, HALCO and Guinea have been operating under this commercial agreement, and the allegation here is that commencing in 2011, NACO became entitled to assert as a third-party beneficiary any rights that Guinea has under the convention and to enjoy the benefit of those shipping rights under this TAA agreement, which Judge Piller correctly recognized is not made part of the record anywhere. So we'll have to assume the facts regarding that agreement that are alleged by the plaintiff. So what we do know is that in this case, neither party to the convention, HALCO nor Guinea, is a party in this action. Let me ask you about that. The district court ruled in light of the proposed second amended complaint. So you would agree with that, correct? I would agree, but I would agree, if we got to that point, the only way- Correct, Your Honor, and let me proceed if I can come back to that. Of course. And so really every cause of action comes from the assertion that NACO is a third-party beneficiary of Guinea's alleged shipping rights under the convention. The district court properly exercised its discretion to rule that Guinea was a necessary party under Rule 19, and that it was the case could not go forward in good conscience with an inequity without Guinea because it determined that under 19A, Guinea's rights could be impaired or impeded, and that's appropriate. And also under 19A, it's also a consideration to determine whether an absent party is necessary if the remaining parties could face a substantial risk of inconsistent rulings or determinations. Can you elaborate a little bit? It's not clear to me. We often hear cases where somebody's evidence, information, understandings may be relevant to something before us, but if the district court were to determine that, for example, Guinea assigned these shipping rights to NACO, and that's just clear and undisputed by Guinea, why would Guinea need to be in the case? Because the issue really is whether then your clients any – there can be any material issue of fact as to whether your clients discriminated or decided the contract issue is on a different ground, the hiring issue is on a different ground. Two reasons, Your Honor. In this case, the court, in order to determine the contract rights, has to construe two contracts. Firstly, the convention, and determine what rights, if any, Guinea has to shipping vis-à-vis HELCO under the convention. So that's the first determination. Secondly, it has to make the determination that Your Honor indicated, whether in fact NANCO has the right to enjoy whatever rights Guinea has under the convention. In this case, the defendant could be – the defendants could be subjected to inconsistent determinations if Guinea were not present in the following way. If, as you speculate, that the court decides, okay, under the TAA, NANCO has the rights, and also under the convention, that Guinea's entitled to 50% of these shipping revenues, so now NANCO is entitled to 50% of the shipping revenues directed towards it. If Guinea disagrees with that determination, that it's – Guinea says, wait a second. NANCO is not entitled to those rights. You know, we're not party to this suit. We don't agree that the TAA says that. It would then institute an arbitration against HELCO under the convention, and the remaining parties here, Judge Rogers said, if we're thinking that HELCO would be a defendant, would be subjected to inconsistent, potentially inconsistent determinations. One here in this court, which binds it because it is here, and one under the arbitration agreement, which it has agreed to. This all assumes that Guinea has, you know, decided to assert its sovereign immunity. We don't have any information on that, do we? Well, I think you have to assume for – Guinea is entitled to sovereign immunity here. Only if it doesn't fit in any of the exceptions under the Foreign Sovereign Immunities Act, and it's a permanent defense. Doesn't it have to be raised? I mean, this is so different from the Philippines case, in which the Philippines was in the case, the Philippines asserted its foreign sovereign immunity. I mean, this is – we're jumping way ahead, aren't we? No, because this court has determined that in a – in this consideration of Rule 19, there is no requirement or obligation of Guinea to make any affirmative indication of participation in this case. In the Kickapoo Tribe case, this court determined that intervention is simply not a consideration to be made under Rule 19. So what we're left with is the fact that Guinea is a sovereign, they're not named, and therefore, you know, considering whether or not Guinea has made any affirmative determination that it's okay for this case to proceed is not appropriate. In the Wichita Tribes case, this court has similarly determined that imposing any obligations on an absent sovereign to come in and make affirmative statements would be, in a sense, putting that sovereign in what the Wichita Circuit Court decision said was Hobson's choice of having to waive their immunity. And so onto the 19A determination, it's not only impairment to Guinea, it's also subjecting the remaining parties here to inconsistent – substantial risk of inconsistent determinations if the absent party is not present. Can I ask a question? Certainly, Your Honor. Appellant argued to the district court that it should allow discovery before it made its Rule 19 determinations ruling on the defendant's motion. This court has recognized the appropriateness of limited jurisdictional discovery in such contexts as the Foreign Sovereign Immunities Act. Why, given all the reasons you just outlined, wouldn't limited discovery have been appropriate here? Well, firstly, I don't know if they raised that below. And secondly, Guinea is – Well, it's in their motions' pleadings. Here, it's – I don't think counsel would – all due respect, I don't know if you were counsel before the district court or not. Yeah. But I don't think that's an issue here. Okay. And let me address your question, Your Honor, that here, there's no dispute that Guinea is a sovereign entity. Secondly, what would we learn from limited discovery to determine – Which is – I'm sorry, Your Honor. The convention and the TAA, exactly what the terms are. I mean, there's commercial activity by Guinea. There's no question about that, it seems to me. And so the question here is, what's the nature of this convention? What went on in New York? What's the nature of the TAA? And your clients might well prevail once we know the answers to those questions. Or the plaintiff might prevail. We just don't know. And neither did the district court. But when you say the nature of the convention, the convention is attached. We know that it's an agreement between two parties. Well, you're the ones who just answered to Judge Pillar. There are two contracts that have to be explored, all right? Right. And we were going over the fact that there are certain commitments that were made in the convention. And I was trying to get you to address the fact that the district court is looking at this proposed second amended complaint. And so the question is, what does the TAA say? And the second amended complaint says what it says. But we don't have it. And so the district court might want to look at it before it rules that Guinea is an indispensable, necessary party here. That's all I'm asking. Yes, I think you get to that conclusion assuming everything that they say about the TAA is true in the second amended complaint. And you need no discovery for that. Guinea is still an indispensable party because when you said, Judge Rogers, discovery regarding the nature of the convention, by that you can only mean what rights and obligations derive under the convention vis-a-vis the shipping rights. And so that is a substantive determination of which Guinea doesn't have to participate. Right. And so that's the whole purpose behind the Rule 19 analysis. But you just admitted Guinea doesn't have to be in that case. Well, no, it does not have to submit itself to this court's jurisdiction. The cases you cited are all talking about mandatory intervention. This is not what we're dealing with here. No, the cases, no. The ones you just cited to me, Kickapoo and Wichita. That wasn't mandatory, Your Honor. That was just a case where the tribe in Kansas were at issue, as Your Honor knows, because Your Honor was part of that tribunal. But I don't think that that was mandatory. I think the case was that there was a necessary party that could not be compelled to participate. But do you understand, suppose, just hypothetically, under this second amended complaint, the discovery determined that Guinea had the 50 percent, that Guinea turned the 50 percent over to the plaintiff, just as Judge Hillard was reviewing with you in questions. Your point is, well, HALCO might face inconsistent determinations because Guinea might come up later and raise issues that are inconsistent with what it has agreed to in the convention and the TAA. Is that your argument? No, I'm saying that those, through discovery, you cannot determine, for example, that Guinea has rights to 50 percent under the convention because you have that. And if you look at that now, those are certainly qualified rights, and that would be a defense that would be raised down, you know, as part of this case. We're at Rule 19. At least I'm at Rule 19. We are. We're trying to figure out, do we affirm, do we reverse, all right? I'm not later on in the case where all of these arguments can be raised to the district court. And I agree, Your Honor, but I'm saying is the determinations that you're focusing on are not discovery determinations. The determination of what rights Guinea has to shipping under the convention is a substantive right determination. And discovery would yield us nothing with respect to that, and Guinea couldn't even be compelled to really participate in any discovery to take a position one way or another. Discovery might tell me a lot about what happened in New York. Well, but Guinea would not even be subject to discovery if it decided not to participate in that discovery. But we don't know that. Well, certainly you don't, but I don't think you need to go there, as I say, because when you say discovery might illuminate the nature of the convention and the nature of the TAA, what you're saying is the court would have to learn more and make a determination about what substantive rights exist under those contracts. And that's all Judge Collier was saying, that eventually the court is going to have to make those substantive right decisions. And if Guinea is a sovereign... But in the meantime, I'll dismiss the case. Pardon? What you're assuming is... We have said that limited discovery for purposes of jurisdiction is appropriate. And I'm saying there is no limited discovery that would cure the fact that eventually the court will have to make a substantive determination of the rights of the parties, and one of those parties, Guinea, is not present and is subject to sovereign immunity. And I think that's the focus. But do you think it would not be required before we decide the Rule 19, or before a court were to decide the Rule 19 question, to know what the nature of the asserted technical assistance agreement is? Because if Guinea had a right and assigned it, with those strings attached, to a shipper, wouldn't that change the nature of the ongoing interest of Guinea? No, I don't think so, because what you're talking about is making a determination, a substantive law determination, that the TAA did in fact assign Guinea's rights. And if you made that determination in the absence of Guinea participating or being bound by that decision, you still have a Rule 19 issue, because they're not a party to that decision. And they can't be bound by that decision. And even if this court looks at the TAA and says, in discovery, produce the TAA, and they look at it and they say, well, it looks awfully clear to us, okay, as long as Guinea has sovereign immunity and is not a party to this proceeding, it can turn around and take a different position any time it wants and subject the remaining defendants to inconsistent rulings, and that's the point of the Rule 19. So I assume, for purposes of your analysis and when you say the nature of the TAA, that they're right and that it does assign. But if Guinea's not bound by the proceeding, at any point in time, the government could change. They could say, hey, we didn't mean that. We're not bound by this. And what if the district court found this was a commercial transaction by Guinea? Pardon, Your Honor? What if the district court were to find or to rule that the nature of the transactions at issue are commercial? I don't think that has any – Then Guinea has no sovereign immunity. Then Guinea has no sovereign immunity to assert because it's under one of the exceptions to the Foreign Sovereign Immunities Act. Okay, Your Honor. I missed your point. Okay. So what happens then if there is no sovereign immunity? Well, if there's no sovereign immunity, then you have to then go the next step and say can Guinea be bound and can Guinea be added here as a party to this proceeding? Because without Guinea being added as a party to the proceeding, you fall back to the Rule 19A analysis that – But all I'm getting at, counsel, is A and B enter into a contract. B tries to execute on that contract with C and D. C and D repudiate the nature of the agreement that A made, and they do it for unlawful reasons, allegedly. So B sues C and D. Can that case not proceed without bringing in A? It's all I want to be clear about. Commercial transaction goes on every day. Well, I think it's different here because what is being alleged is that B is trying to assert rights under a contract that A has with C and D. And therefore, in that scenario, yes, A is a necessary party and has to be brought into the proceeding. Otherwise, C and D would be subjected to potentially inconsistent rulings, Your Honor. And that's the point behind the 19A analysis that I think I'm trying to bring to the Court's attention. I think that's what Judge Collier was focused on. Thank you. That was helpful. Anything else? No, Your Honor. Thank you. Counsel for Appellant? Yes. Just briefly, the appellant states in footnote 68, contrary to what it's arguing here, that as noted by the district court to determine whether defendants discriminated against Nyko Shipping in violation of Section 1981, by refusing to implement Nyko Shipping Guinea's shipping rights, compels an analysis of the convention to determine what shipping rights are. Consistent therewith, the lower court stated, as the Court's indulgence, Nyko Shipping Guinea also contends that the Court can avoid the indispensable party analysis, that's at A153, altogether if it looks no further than the technical assistance agreement. But it is not possible, as we contend, it's not possible to resolve any question regarding the nature and extent of Nyko Shipping Guinea's rights under the technical assistance agreement without analyzing the convention from which such rights flow. Nevertheless, the Court made a decision therein. The appellant is incorrect. The appellant's argument is based on a claim that we conceded at the very outset. Our argument is not based on a third-party beneficiary claim. It's based on the contract, the TAA claim. Therefore, the analysis has to be redirected to the TAA and the implications of the TAA. As to Guinea, it is oxymoronic that Guinea, which gives a contract to Nyko Shipping, which then goes to a board meeting where the contract is ratified, that its interest is going to be disputed. It is not disputed. Unlike the cases, the Indian tribe cases, where the sovereign entity, there were disputed claims about their rights. That doesn't exist in this particular situation. In all, the case should be remanded. There should be jurisdictional discovery, and we would otherwise submit on the record. Thank you. Thank you. We'll take the case under. Oops. Sorry. Just two quick questions. One is, have you conceded that Guinea is immune under the Foreign Sovereign Use Act? No. Your question is? I'm sorry. That Guinea has immunity under the Foreign Sovereign Use Act. I don't concede that, necessarily. And what discovery do you think is relevant on remand? I think it's very clear, first and foremost, as a predicate, is that this issue, the 50% issue in Guinea's intentions, would be very important and very clear, and we would expect that Guinea, while it wouldn't necessarily be a party, could very easily, and we argue that it could very easily testify that what its view of its rights are, but not only Guinea, Alcoa as well, because they're on the board of the CBG. I'm a little bit confused by your opening concession. What do you mean that you're not challenging the third-party beneficiary? You're not pressing that claim, because I thought that was how you got what the TAA claim was essentially resting on. Oh, not at all. No, not at all. The 1981 claim is not based at all on, necessarily, the derivative rights that Guinea has from the CBG. The 1981 claims are based upon the fact that there's a TAA, which derives from the Article 9 rights, but it's rooted in the Technical Assistance Agreement and the implementation of the Technical Assistance Agreement and Alcoa's impairment of the Technical Assistance Agreement and its interference and refusal on racial grounds as well as other grounds to give rights to Guinea, I mean to NACO shipping, Guinea, which it would otherwise have, and it's spelled out in the paperwork. Anything further? Thank you, Your Honors. We'll take the case under advisement.
judges: Rogers, Brown, Pillard